# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 12-304 |
| ROBERT L. GRANT and<br>CLAUDE C. LIGHTFOOT, JR. | SECTION "C" (2) |

## ORDER AND REASONS[1]

Before the Court is defendant Claude C. Lightfoot, Jr.'s Motion to Dismiss. Rec. Doc. 32. The United States of America opposes the motion. Rec. Doc. 36. Having examined the memoranda of counsel, the record, and the applicable law, the Motion is DENIED for the following reasons.

## I. BACKGROUND

Defendant Claude C. Lightfoot, Jr. ("Lightfoot") was indicted by a grand jury on November 29, 2012. Rec. Doc. 1. The indictment ("Indictment") charges Lightfoot with conspiracy to commit bankruptcy fraud under 18 U.S.C. §§ 371 and 157 (Count One) and concealment of assets under 18 U.S.C. §§ 152(1) and 2 (Count Three). *Id.* Lightfoot is a bankruptcy attorney who previously represented codefendant Robert L. Grant ("Grant") in a bankruptcy proceeding before the Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 3.

According to the Indictment, Grant filed for bankruptcy in the Northern District of California in 2001 using Social Security Number ("SSN") XXX-XX-1774. Rec. Doc. 1, p.1. He listed a number of unsecured creditors on his schedules, including Bank of America. *Id.* That court

---

[1] Ashley Stockton, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

dismissed the case in 2003, and Grant did not pay any of the unsecured creditors. Rec. Doc. 1, p. 2. He subsequently moved to New Orleans. *Id.* Bank of America sold its uncollected debt to New Falls Corporation ("New Falls"), and New Falls filed a collections action against Grant in California. *Id.* It obtained a default judgment against him for $23,827.71 in June 2006. *Id.* New Falls located Grant in Louisiana and filed an action to enforce its judgment in state court, but Grant sought to set aside the judgment by claiming that he was not the Robert Grant who obtained the line of credit from Bank of America. *Id.* He claimed that his SSN was XXX-XX-7086, not XXX-XX-1774. *Id.* New Falls agreed to set aside the default judgment. *Id.* However, once it determined that Grant had misrepresented his identity and used both SSNs, New Falls filed a motion for summary judgment on December 18, 2006, seeking to enforce its prior default judgment against Grant in Louisiana. *Id.*

It is further alleged that four days prior to a hearing scheduled for the summary judgment motion, Grant filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of Louisiana under the SSN XXX-XX-1774. *Id.* at 2-3. He was represented by defendant Lightfoot, who entered the picture at this point. *Id.* A week prior to filing the petition, Grant had a Vanguard bank account. *Id.* at 3. On March 7, 2007, he closed the account and requested the balance in the form of a check, which Vanguard issued in the amount of $25,184.72. *Id.* at 3-4. Grant had the check in his possession when he filed for Chapter 7 bankruptcy, but failed to disclose the existence of the account or check. *Id.* at 4.

The Indictment further alleges that on April 10, 2007, Grant took the check to Lightfoot, who retained it for several days, but failed to disclose its existence to the bankruptcy court or the Trustee. *Id.* Lightfoot returned it to Grant on April 23, 2007 rather than retain it for submission to the Trustee as assets of the estate. *Id.* Lightfoot also sought to delay the April 19, 2007 meeting of the

creditors, during which Grant would have been questioned regarding his assets. *Id.* The meeting was rescheduled for May 17, 2007. *Id.* Two days before the meeting, Lightfoot filed amended schedules disclosing the Vanguard account and check, and filed a motion to convert the Chapter 7 Petition to a Chapter 13 case. *Id.* At the creditors meeting, both Lightfoot and Grant represented that the amount in the check had been spent when it had not been. *Id.*

Count One of the Indictment charges that from on or about March 15, 2007, and continuing thereafter until the present, Grant and Lightfoot knowingly, willfully, and fraudulently conspired and agreed together to devise a scheme to defraud New Falls, the Bankruptcy Trustee, and other creditors; to conceal from creditors and the Bankruptcy Trustee property and money belonging to the estate of Grant; and to make false and fraudulent representations and claims concerning and in relation to a bankruptcy proceeding under Chapter 7 of Title 11 of the United States Code, all in violation of 18 U.S.C. §§ 371 and 157. *Id.* at 5. The Indictment identifies overt acts committed in furtherance of the conspiracy: Grant giving Lightfoot the check; Lightfoot seeking to reschedule the creditors meeting; Lightfoot returning the check to Grant; Lightfoot filing a motion to convert from Chapter 7 to Chapter 13; Grant and Lightfoot falsely representing that the money from the check had been spent; Grant falsely testifying at a December 6, 2007 hearing about how he obtained the two SSNs; Grant signing a listing agreement and purchase agreement to sell his property in New Orleans; and Grant seeking to claim a $25,000 Louisiana homestead exemption. *Id.* at 6. The Indictment additionally charges in Count Three that Grant and Lightfoot, aided and abetted by each other, did knowingly and fraudulently conceal and cause to be concealed from creditors and from the United States Trustee $25,184.72 in violation of 18 U.S.C. §§ 152(1) and 2. *Id.* at 9.

In his Motion to Dismiss, Lightfoot argues that both Counts One and Three are time-barred under 18 U.S.C. § 3282, the statute of limitations for conspiracy and other federal crimes. Rec. Doc. 32, p. 1. Lightfoot argues that the conspiracy terminated on May 15, 2007 when the Vanguard assets were disclosed, and that both counts should therefore be dismissed because more than five years passed between the time the conspiracy was completed (and concealed assets disclosed) and the time the Indictment was filed. Rec. Doc. 32-1, p. 3. He maintains that the remaining overt acts alleged could not have furthered a conspiracy to hide assets that had already been disclosed. *Id.* at 5. Regarding Count Three, Lightfoot argues that the government is incorrect in applying the statute of limitations contained in 18 U.S.C. § 3284. *Id.* at p. 6.

## II. LAW AND ANALYSIS

### A. Standard of Review

For purposes of a motion to dismiss, the "allegations of the indictment must be taken as true." *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16, 72 S.Ct. 329, 332 n.16, 96 L.Ed 367 (1952); *see United States v. Mann,* 517 F.2d 259, 266 (5thCir. 1975). A defendant charged with conspiracy may bring a motion to dismiss the indictment as time-barred. *See United States v. Loeb,* No. 04-223, 2005 WL 357184, at *1 (E.D. La. Feb. 14, 2005). An indictment that alleges the offense of conspiracy continued through a date within the five-year statute of limitations is facially sufficient to survive an attack under Federal Rule of Criminal Procedure 12(b) for being time-barred. *See United States v. Rankin,* 825 F.Supp.2d 761, 766 (S.D. Miss. May 24, 2011).

### B. Count One: Conspiracy to Commit Bankruptcy Fraud

Lightfoot argues that Count One is time-barred under 18 U.S.C. § 3282. A conspiracy charge under § 371 must be brought within five years of the last overt act of the conspiracy alleged

4

in the indictment and proved at trial. See 18 U.S.C. § 3282; *United States v. Mann*, 161 F.3d 840, 856 (5th Cir. 1998); *Girard v. United States*, 744 F.2d 1170, 1171 (5th Cir. 1984). The prosecution "must allege and prove the commission of at least one overt act by one of the conspirators within [the five years prior to the filing of the indictment] in furtherance of the conspiratorial agreement." *United States v. Davis*, 533 F.2d 921, 926 (5th Cir 1976). In determining whether the statute of limitations has run, the "crucial question . . . is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether an act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Girard*, 744 F.2d at 1172. A conspiracy continues until the conspirators realize the full anticipated economic benefits of that conspiracy. *Id.*

### *1. Scope of the Conspiracy*

Lightfoot argues that the scope of the conspiracy alleged is limited to conspiring to hide the Vanguard assets from the bankruptcy estate and Grant's creditors. Rec. Doc. 32-1, p. 3-4. However, for the purposes of this Motion, the Court's reading of the Indictment indicates a broader scheme to defraud creditors. Rec. Doc. 1, p. 5. The Indictment defines the conspiracy as encompassing more than the concealment of the Vanguard assets from creditors. Id. Lightfoot relies on *United States v. Davis*, where a conspiracy to make false statements to a government agency was found to have run its course with the submission of the false statements. *Davis*, 533 F.2d at 928. He argues that the conspiracy alleged in this case similarly ended with the disclosure of the check from the Vanguard account. Rec. Doc. 32-1, p. 4.

However, the scope of the conspiracy alleged in *Davis* was more narrowly defined than the scope of the conspiracy alleged here. In *Davis*, the indictment charged the defendants solely with

5

conspiring to make false statements to a government agency, and therefore the conspiracy did end with the submission of the false statements. *Davis*, 533 F.2d at 927-928. Here, the Indictment alleges that Grant and Lightfoot conspired to devise a scheme to defraud New Falls, the Trustee, and other creditors, to conceal property belonging to the Grant's estate, and to make fraudulent representations and claims concerning a bankruptcy proceeding under Chapter 7 of Title 11 of the United States Code. Rec. Doc. 1, p. 5. The object of the conspiracy is identified as: to "conceal the value and amount of Grant's assets and falsely assert that all assets had been property disclosed . . . *all to attempt to further the scheme or artifice to defraud his creditor(s)*." *Id.* (emphasis added).

According to the government, the defendants' interest was in defrauding creditors and concealing assets, not solely in concealing the Vanguard check. Rec. Doc. 1, p. 4-5. The Indictment specifically identifies and alleges a broader scheme to defraud creditors that would not necessarily terminate with the disclosure of the Vanguard assets, and such a continuing scheme could plausibly be furthered by additionally alleged overt acts. As a result, it is not evident from the allegations set forth in the Indictment that the action is time-barred. Because a conspiracy continues "until the conspirators realize the full economic benefit of that conspiracy," the government has alleged that the conspiracy did not end with the disclosure of the Vanguard assets, as it remained possible for the defendants to attempt to hide assets or defraud creditors in furtherance of the alleged conspiracy. *See Girard,* 744 F.2d at 1172.

### *2. Overt Acts*

Based on his narrow interpretation of the scope of the conspiracy, Lightfoot contends that the overt acts that occurred within the five-year limitation period do not further the alleged conspiracy and should be disregarded. Rec. Doc. 32-1, p. 4. The government identifies the

6

December 6, 2007, false testimony during the hearing on Grant's motion to convert his case to Chapter 13 as an overt act in furtherance of the conspiracy. Rec. Doc. 1, p. 6. The government alleges that the testimony was an attempt to explain why Grant would have two SSNs if he was acting in good faith. Rec. Doc. 36, p. 5.

A bankruptcy court may decline to convert a case to Chapter 13 if the court determines that the motion was not filed in good faith. *See Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956. The government alleges that if Grant's false testimony had convinced the bankruptcy court he was operating in good faith, the court would have granted his motion to convert, enabling Grant to avoid relinquishing funds as would have been required under Chapter 7. *Id.* The government identifies this as Grant's goal, and represents that the testimony was key to the scheme to deprive his creditors of assets (namely the proceeds from the Vanguard check). Rec. Doc. 36, p. 3. If the scope of the conspiracy is construed as broadly as we read it to be alleged in the Indictment, the government has set forth facts that suggest that the false testimony could be an overt act in furtherance of the conspiracy. If this or another alleged overt act is proved at trial, Lightfoot's statute of limitations defense would fail. We interpret the Indictment as alleging that the offense of conspiracy continued into the five-year period of limitations, which indicates that the Indictment is facially sufficient to survive the Motion to Dismiss.

In his reply memorandum, Lightfoot argues that the Indictment fails to allege that the defendants conspired to defraud creditors by converting the case from a Chapter 7 to a Chapter 13 bankruptcy and fails to allege that the false testimony about how Grant obtained two SSNs was in furtherance of a scheme to defraud. Rec. Doc. 41, p. 3. However, the Indictment specifically lists the attempted conversion and the false testimony to be overt acts in furtherance of the conspiracy

7

to defraud. Rec. Doc. 1, p. 6. This Court finds Lightfoot's contentions on these matters unpersuasive.

Lightfoot also contends in his reply memorandum that converting to Chapter 13 bankruptcy is legally permissible and does not defraud creditors as a matter of law. Rec. Doc. 41, p. 4. He argues that any allegation that converting to Chapter 13 bankruptcy was an object of the conspiracy is therefore fatally flawed. *Id.* at 5. Lightfoot relies on *United States v. Milwitt,* 475 F.3d 1150 (9th Cir. 2007), which held that bankruptcy fraud under § 157 "cannot be predicated only on acts that occur within the bankruptcy context that are untethered to the underlying fraudulent scheme." *Milwitt*, 475 F.3d at 1160. *Milwitt* did *not* hold that bankruptcy is a legal remedy that does not defraud creditors as a matter of law, as Lightfoot posits. Lightfoot alternatively uses the threshold set forth in *Milwitt* and represents that Grant's testimony was "untethered" to any underlying fraudulent scheme. Rec. Doc. 41, p. 5. However, the Court's reading of the Indictment indicates that the government alleges that the testimony was related to the "underlying scheme" to defraud by alleging that a conversion to Chapter 13 gained by establishing good faith would have enabled Grant to delay turning over assets in furtherance of the alleged conspiracy. Rec. Doc. 1, p. 6; Rec. Doc. 36, p. 5-6. Therefore, the government has set forth facts that allege that the "bankruptcy fraud under § 157 [is] related to the alleged fraudulent scheme," and that the false testimony was "made as part of a scheme to defraud involving the bankruptcy proceeding." *Milwitt,* 475 F.3d at 1160. It is plausible that the testimony constitutes an overt act and that the Indictment is timely as a result. The Indictment alleges facts that suggest the offense of conspiracy continued into the five-year limitations period and it is therefore facially sufficient to survive the Motion to Dismiss as to Count One.

**C. Count III: Concealment of Assets**

Lightfoot argues that Count Three is time-barred under 18 U.S.C. § 3282. Rec. Doc. 32, p. 1. He contests the government's assertion that the relevant statute of limitations is 18 U.S.C. § 3284. Rec. Doc. 32-1, p. 6. He contends that because the check was disclosed, the concealment was not ongoing, and § 3284 therefore is inapplicable. *Id.* 18 U.S.C. § 3284 provides:

> The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge.

On its face, this section applies to Count Three of the Indictment, charging Lightfoot and Grant with concealing assets. The period of limitations would not have began to run until Grant was denied discharge or until it became clear that discharge was impossible. 18 U.S.C. § 3284; *see United States v. Dolan,* 120 F.3d 856, 867 (8th Cir. 1997). This Court is offered no legal authority to support Lightfoot's contention that § 3284 no longer applies if concealed assets have been disclosed, nor does the statute on its face suggest that it would no longer apply in such a case.

Grant was denied discharge on November 8, 2012, Rec. Doc. 36, p. 7, and the Indictment alleges that the offense of concealment continued until that date. Rec. Doc. 1, p. 8. November 8, 2012 is less than five years before the Indictment was filed on November 29, 2012, and therefore Count Three would not be time-barred. Alternatively, the government contends it became clear Grant would be denied discharge on July 3, 2008, which is also less than five years before the Indictment was filed. *Id.* at p. 7 n.2. The Indictment would also be timely if this second date was found to be the date on which the statute of limitations began to run.. There are no facts alleged in the Indictment or Motion that suggest that Count Three of the Indictment is time-barred under 18 U.S.C. § 3284.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Dismiss filed by defendant Claude C. Lightfoot, Jr. is DENIED.[2]  Rec. Doc. 32.

New Orleans, Louisiana, this 16th day of July, 2013.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

---

[2] In making this order, the Court does not intend to preclude the defendant from presenting these arguments at trial.